# EXHIBIT H

# RESTRICTIVE COVENANT AGREEMENT

This Restrictive Covenant Agreement ("Agreement") dated June 12, 2017 (the "Effective Date") is entered into between VENTURE GLOBAL LNG, INC. (the "Company") and JESSICA WICKETT (the "Employee") as of the Effective Date.

The parties recognize that they are entering into this Agreement to protect the Company's confidential and proprietary materials, goodwill, trade secrets, relationships, competitive position, and related interests. For good and valuable consideration, including the Company stock options granted to Employee as of the Effective Date under the Company's 2014 Stock Option Plan (that are contingent on Employee's execution of this Agreement), the sufficiency of which Employee expressly acknowledges, Employee hereby agrees as follows:

1. Restrictive Covenants.

   (a) Confidential Information.

   (i) Employee hereby agrees, during Employee's term of employment and for five years thereafter, to treat all Confidential Information as strictly confidential, and to maintain adequate security procedures and take such additional precautions as may be prescribed from time to time by the Company to prevent the unauthorized or inadvertent disclosure, misuse, or loss of Confidential Information. Employee hereby agrees that he or she shall not, directly or indirectly, communicate, disclose, or divulge to any person, or use for his or her benefit or the benefit of any person (except as may be required in the scope of his or her duties), in any manner, any Confidential Information concerning the conduct and details of the businesses of the Company and its affiliates. For purposes of this Agreement, the term "Confidential Information" means all information, knowledge, or data relating to the Company or any of its affiliates, or to the Company's or any such affiliate's respective businesses and investments (whether prepared by the Employee or otherwise), learned by Employee directly or indirectly from the Company or any of its affiliates or otherwise. Confidential Information may be in any form, including spoken, written, printed, or electronic. Confidential Information includes, but is not limited to, information regarding business, administrative, or financial matters of the Company or its affiliates (including ideas, technical data, concepts, performance, equipment, configuration, trade secrets, budget information, business plans, strategies, methods, marketing, cost or pricing information, accounting information, information regarding debt and equity investors and potential investors, including the identity of and communications with such individuals or entities, information regarding current, former, or prospective employees or clients, including client preferences, needs, priorities, and other client considerations, crisis management plan policies, personnel information, contracts or terms thereof with any client, vendor, investors or lenders, or other person or entity regarding other transactions or agreements, and any other information constituting the Company's proprietary information). Confidential Information also includes Work Product, as defined below. Confidential Information shall not include information that (A) is or becomes publicly available, other than as a result of a breach of this Agreement by Employee, or (B) was already known to and legally obtained by Employee before its disclosure to Employee during Employee's employment by the Company.

1

(ii) Upon termination of Employee's employment for any reason, or at any other time upon request of the Company, Employee shall immediately (A) deliver to the Company the original and all copies of physical or electronic documents, records, files, recordings, media or other resources containing any Confidential Information in Employee's possession, custody, or control; and then (B) assure that no duplicates of such Confidential Information remain in Employee's possession, custody, or control, including on hard drives, network or "cloud" storage, or otherwise. Notwithstanding the foregoing, Employee may retain Employee's own personal compensation, financial, and benefits information.

(iii) Employee may use or disclose Confidential Information when such use or disclosure is (A) required in the performance of Employee's authorized employment duties to the Company; and (B) each person or entity to whom Confidential Information is disclosed, published, communicated, or made available is bound by a written obligation to protect confidentiality comparable to that in this Agreement. Employee may also use or disclose Confidential Information when authorized in writing to do so by the Company.

(iv) Nothing herein shall prevent Employee from (A) complying with a valid subpoena or other legal requirement for disclosure of Confidential Information, *provided* that Employee shall use good faith efforts to notify the Company promptly and in advance of disclosure if he or she believes that he or she is under a legal requirement to disclose Confidential Information otherwise protected from disclosure under this subsection and if Employee remains legally compelled to make such disclosure, Employee may only disclose that portion of the information that Employee is required to disclose and shall use best efforts to ensure that such information is afforded confidential treatment; (B) disclosing the terms and conditions of this Agreement to Employee's spouse or tax, accounting, financial or legal advisors, so long as they agree in writing to be bound by the obligations of this subsection; (C) reporting a possible violation of law to a governmental entity or law enforcement, including making a disclosure that is protected under the whistle blower protections of applicable law; or (D) bringing an action under Section 12 to enforce this Agreement. Neither the Company nor its subsidiaries or affiliates may retaliate against Employee for engaging in the specific activities set forth in this subsection.

(b) <u>Defend Trade Secrets Act</u>. Employee hereby acknowledges and understands that an individual may not be held liable under any criminal or civil federal or state trade secret law for disclosure of a trade secret: (i) made in confidence to a government official, either directly or indirectly, or to an attorney, solely for the purpose of reporting or investigating a suspected violation of law or (ii) in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. Additionally, Employee further acknowledges and understands that an individual suing an employer for retaliation based on the reporting of a suspected violation of law may disclose a trade secret to his or her attorney and use the trade secret information in the court proceeding, so long as any document containing the trade secret is filed under seal and the individual does not disclose the trade secret except pursuant to court order.

(c) <u>Non-Competition and Non-Solicitation</u>.

(i) Employee agrees that Employee shall not, except with the Company's express prior written consent, at all times during employment with the Company and for a period of six (6)

2

months following termination of employment (regardless of the reason for termination), directly or indirectly, engage in any business involving the development, construction or operation of any modular, mid-scale liquefied natural gas export facilities globally (the "Business"), whether such Business is conducted by Employee individually or as a principal, partner, member, stockholder, director, trustee, officer, employee, or independent contractor of any person, where Employee's engagement in the Business involves providing services or performing duties that are competitive with any of the services Employee provided to the Company or its affiliates during the 24 months prior to termination of Employee's employment with the Company; *provided, however,* that this Section 1(c)(i) shall not be deemed to prohibit Employee from employment at any multinational, integrated oil and gas company that has investments in liquefied natural gas export facilities so long as Employee's duties are not related to the Business. Notwithstanding the foregoing, for employees whose primary place of employment is in Louisiana, the term "Business" is limited to Businesses located in Cameron, Calcasieu, or Plaquemines parishes.

(ii) Employee agrees that Employee shall not, except with the Company's express prior written consent, at all times during employment with the Company and for a period of six (6) months following termination of employment (regardless of the reason for termination), own any interests in any company involved in the Business and which is competitive, directly or indirectly, with any Business carried on by the Company; *provided, however,,* that this Section 1(c)(ii) shall not be deemed to prohibit the direct or indirect ownership by Employee of up to one percent (1%) of the outstanding equity interests of any public company.

(iii) Employee agrees that Employee shall not, except with the Company's express prior written consent, at all times during employment with the Company and for a period of six (6) months following termination of employment (regardless of the reason for termination), for the benefit of any entity or person (including Employee), (A) solicit, induce, or encourage any employee of the Company, or any of its affiliates, to leave the employment of the Company or its affiliates, where such employee was employed by the Company or an affiliate within the twelve (12) months prior to Employee's termination, (B) solicit, induce, or encourage any customer, client, or independent contractor of the Company, or any of its affiliates, to cease or reduce its business with or services rendered to the Company or its affiliates, where such customer, client, or independent contractor was engaged with the Company or an affiliate within the twelve (12) months prior to Employee's termination, or (C) hire (on behalf of Employee or any other person) any employee or independent contractor who has left the employment or other service of the Company or its affiliates within one (1) year of the termination of such employee's employment, or independent contractor's engagement, with the Company or its affiliates, where such employee or independent contractor was employed or engaged by the Company or an affiliate within the twelve (12) months prior to Employee's termination, provided, however, that nothing in this Section 1(c)(iii) shall prohibit Employee from being involved with general solicitations for employment or in hiring anyone who responds to such solicitations. Notwithstanding the foregoing, for employees whose primary place of employment is in Louisiana, subsection (c)(iii)(B) is limited to Cameron, Calcasieu, or Plaquemines parishes.

(d) Non-Disparagement. Employee hereby agrees, at all times during employment with the Company and following termination of employment (regardless of the reason for termination), not to make disparaging or defamatory statements regarding the Company, its affiliates, or their respective

3

officers or directors, either jointly or severally. Notwithstanding the foregoing, nothing in this Agreement shall preclude Employee from making truthful statements that are required by applicable law, regulation, or legal process.

(e) <u>Exceptions to Restrictions</u>. This Agreement is not intended to, and shall not be construed to, limit any legal right Employee may have to communicate information or take other action, to the extent such right as a matter of law may not be limited by private agreement.

(f) <u>Full-Time Service</u>. As a full-time employee, Employee understands and agrees that he or she will devote substantially all of his or her business time and effort to the performance of his or her duties to the Company; *provided, however,* that, this obligation does not prevent Employee from performing personal and charitable activities and any other activities, in each case, that do not materially interfere with Employee's duties to the Company as a full-time employee and that comply with this Agreement.

(g) <u>Reasonableness</u>. Employee expressly acknowledges that the restrictive covenants and agreements contained in this <u>Section 1</u> are reasonable with respect to subject matter, length of time, geographic area, and otherwise, for the protection of the legitimate business interests of the Company and its affiliates, including, without limitation, their goodwill and Confidential Information.

(h) <u>Remedies</u>.

(i) Employee agrees that any breach of the covenants contained in <u>Section 1</u> of this Agreement would result in irreparable injury and damage to the Company for which the Company would have no adequate remedy at law. Employee therefore also agrees that, in the event of a breach or any threat of breach of the covenants contained in <u>Section 1</u> of this Agreement by Employee and/or any and all persons acting for and/or with Employee, the Company shall be entitled to an immediate injunction and restraining order from a court or arbitrator of competent jurisdiction to prevent such breach, threatened breach and/or continued breach by Employee and/or any and all persons acting for and/or with Employee, without having to prove damages, and without having to post bond or security, which Employee expressly waives. The availability of injunctive relief shall be in addition to any other remedies to which the Company may be entitled at law or in equity, including a claim for damages.

(ii) If at any time Employee breaches the provisions set forth in <u>Section 1</u> of this Agreement, the Company shall have the right to cause the forfeiture of (A) any outstanding Company stock option or other Company equity granted to Employee (such options or other equity, "<u>Company Equity</u>"), and (B) with respect to the period commencing twelve (12) months prior to Employee's termination of employment with the Company and ending twelve (12) months following such termination of employment (I) a forfeiture of any gain recognized by Employee upon the exercise or vesting of Company Equity or (II) a forfeiture of any stock acquired by Employee upon the exercise or vesting of Company Equity (but the Company will, in the case of a stock option, repay Employee the option exercise price paid to acquire the stock, without interest).

(i) <u>Modification</u>. If any court or arbitrator of competent jurisdiction determines that any provision of this <u>Section 1</u> is unenforceable because of the duration or geographic scope of such

4

provision, or being too extensive in any other respect, it is the parties' intent that such court or arbitrator shall modify such provision to the minimum extent necessary to render the provision enforceable, and in its modified form, such provision shall be enforced.

2. Assignment/Works Made for Hire.

(a) Employee acknowledges and agrees that all Work Product (defined below) shall be the sole and exclusive property of the Company and is owned by the Company in the entirety both as: (i) "works made for hire" (to the extent permitted by law), and (ii) the exclusive owner or assignee of all rights to the Work Product. To the extent that the foregoing does not apply, Employee hereby irrevocably assigns to the Company, for no additional consideration, Employee's entire right, title and interest in and to all Work Product, including the right to sue and recover for all past, present and future infringement, misappropriation or dilution thereof. To the extent any copyrights are assigned under this Agreement, Employee hereby irrevocably waives, to the extent permitted by applicable law, any and all claims Employee may now or hereafter have in any jurisdiction to all rights of paternity, integrity, disclosure and withdrawal and any other rights that may be known as "moral rights" with respect to all Work Product. During and after Employee's employment, Employee agrees to reasonably cooperate with the Company to secure, maintain, protect, and enforce the Company's rights in the Work Product. Employee hereby irrevocably grants the Company power of attorney to execute and deliver any such documents on the Company's behalf in Employee's name and to do all other lawfully permitted acts to transfer the Work Product to the Company and further the foregoing to the full extent permitted by law, if Employee does not promptly cooperate with the Company's request (without limiting the rights the Company shall have in such circumstances by operation of law). The power of attorney is coupled with an interest and shall not be affected by Employee's subsequent incapacity. Employee agrees that Employee will not incorporate, or permit to be incorporated, any prior inventions in any Work Product without the Company's prior written consent.

(b) "Work Product" means all writings, works of authorship, technology, inventions, discoveries, ideas and other work product of any nature whatsoever, that are created, prepared, produced, authored, edited, amended, conceived or reduced to practice by Employee individually or jointly with others during the period of Employee's employment by the Company and relating in any way to the business or contemplated business (regardless of when or where the work product is prepared or whose equipment or other resources are used in preparing the same), all tangible embodiments thereof, and all intellectual property rights therein.

3. Cooperation With Regard to Litigation. Employee agrees to cooperate with the Company, without additional compensation for his time, by making himself available to testify on behalf of the Company or any affiliate of the Company, in any pending, threatened, or anticipated action, suit, or proceeding, whether civil, criminal, administrative, or investigative, and to assist the Company, or any affiliate of the Company, in any such pending, threatened, or anticipated action, suit, or proceeding, by providing information and meeting and consulting with the Board or its representatives or counsel, or representatives or counsel to the Company or any affiliate of the Company, as may be reasonably requested and after taking into account Employee's post-termination responsibilities and obligations. The Company agrees to reimburse Employee, on an after-tax basis, for all reasonable out of pocket expenses,

including reasonable legal fees, actually incurred in connection with his provision of testimony or assistance.

4. <u>Modification</u>. This Agreement may be amended, supplemented, or modified only by a written instrument duly executed by or on behalf of each party.

5. <u>Entire Agreement</u>. This Agreement contains and constitutes the entire understanding and agreement between the parties on its subject matter, and, except as otherwise provided herein, it supersedes and cancels all previous negotiations, agreements, commitments, and writings in connection herewith.

6. <u>No General Waivers.</u> The failure of any party at any time to require performance by any other party of any provision hereof or to resort to any remedy provided herein or at law or in equity shall in no way affect the right of such party to require such performance or to resort to such remedy at any time thereafter, nor shall the waiver by any party of a breach of any of the provisions hereof be deemed to be a waiver of any subsequent breach of such provisions. No such waiver shall be effective unless in writing and signed by the party against whom such waiver is sought to be enforced.

7. <u>Severability</u>. If any provision of this Agreement is found, held, or deemed by a court or arbitrator of competent jurisdiction to be void, unlawful, or unenforceable under any applicable statute or controlling law, and cannot be cured through the application of Section 1(i), the remainder of this Agreement shall continue in full force and effect and the invalid or unenforceable provision shall be deemed not to be a part of this Agreement.

8. <u>Assignability</u>. This Agreement shall be assignable by the Company and shall inure to the benefit of its successors and assigns.

9. <u>WAIVER OF JURY TRIAL</u>. TO THE EXTENT APPLICABLE, EACH OF THE PARTIES TO THIS AGREEMENT HEREBY AGREES TO WAIVE ITS RESPECTIVE RIGHTS TO A JURY TRIAL FOR ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THEIR EMPLOYMENT RELATIONSHIP.

10. <u>Survival</u>. The provisions of this Agreement shall survive any termination or expiration of this Agreement and/or termination of Employee's employment for any reason.

11. <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument. Any facsimile or electronically transmitted copies hereof or signature hereon shall, for all purposes, be deemed originals.

\\DC - 043006/000006 - 10396396 v1

12. <u>Governing Law; Disputes; Arbitration</u>.

(a) <u>Governing Law</u>. This Agreement shall be governed by the laws of the State of Delaware, without giving effect to any conflict or choice of law provision that would result in the application of another state's law.

(b) <u>Arbitration</u>. Any dispute or controversy arising under or in connection with this Agreement shall be settled exclusively by arbitration conducted in the Wilmington, Delaware by a single arbitrator. The arbitration shall be administered by the JAMS dispute resolution service pursuant to its rules for resolving employment disputes in effect at the time of submission to arbitration. Judgment may be entered on the arbitrator's award in any court having jurisdiction. For purposes of entering any judgment upon an award rendered by the arbitrator, the Company and Employee hereby consent to the non-exclusive jurisdiction of any state or federal court having jurisdiction over any portion of New Castle County, Delaware. The Company and Employee hereby agree that a judgment upon an award rendered by the arbitrators may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Each party shall bear its or his costs and expenses arising in connection with any arbitration proceeding pursuant to this <u>Section 12(b)</u>. Notwithstanding the foregoing, claims brought by the Company under <u>Section 1(h)(i)</u> may be brought in any state or federal court of competent jurisdiction without complying with the arbitration procedures of this <u>Section 12(b)</u>, and Employee agrees and submits to the jurisdiction of any such court for such claims.

13. <u>Headings</u>. Section and subsection headings contained in this Agreement are inserted for the convenience of reference only. Section and subsection headings shall not be deemed to be a part of this Agreement for any purpose, and they shall not in any way define or affect the meaning, construction, or scope of any of the provisions hereof.

14. <u>At-Will Employment</u>. Nothing in this Agreement shall create any right to continued employment or in any way supersede, undermine or otherwise modify the at-will status of the employment relationship between the Company and Employee.

*[Signatures appear on the following page]*

I have carefully read this Agreement and I understand and accept its terms. I agree that I will continue to be bound by the provisions of this Agreement after my employment with the Company has ended, regardless of the reason for termination.

Employee

Name: *Jessica Blake Wickett*
Jessica Blake Wickett
Date: June 16, 2017

Accepted on behalf of the Company:

VENTURE GLOBAL LNG, INC.

By: *D Michael Eberhardt*
Name: D Michael Eberhardt
Title: CFO
Date: 6/20/2017