```
 1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF VIRGINIA
 2                  ALEXANDRIA DIVISION

 3   --------------------------x
     JESSICA WICKETT,           :    Civil Action No.:
 4                              :    1:24-cv-1869
               Plaintiff,       :
 5        versus                :    Thursday, December 19, 2024
                                :    Alexandria, Virginia
 6   VENTURE GLOBAL LNG, INC.,  :
                                :    Pages 1-21
 7             Defendant.       :
     --------------------------x
 8
          The above-entitled motions hearing was heard before
 9   the Honorable Leonie M. Brinkema, United States District
     Judge.  This proceeding commenced at 10:36 a.m.
10
                   A P P E A R A N C E S:
11
     FOR THE PLAINTIFF:   MICHAEL DYSON, ESQUIRE
12                        SULLIVAN & WORCESTER LLP
                          1666 K Street, NW
13                        Washington, D.C.  20006
                          (202) 775-1200
14
                          GERRY SILVER, ESQUIRE
15                        SULLIVAN & WORCESTER LLP
                          1251 Avenue of the Americas
16                        19th Floor
                          New York, New York  10020
17                        (212) 660-3000

18   FOR THE DEFENDANT:   RYAN SCARBOROUGH, ESQUIRE
                          ELAINE HORN, ESQUIRE
19                        EMILY PISTILLI, ESQUIRE
                          WILLIAMS & CONNOLLY LLP
20                        680 Maine Avenue, SW
                          Washington, D.C.  20024
21                        (202) 434-5029

22   COURT REPORTER:      STEPHANIE M. AUSTIN, RPR, CRR
                          Official Court Reporter
23                        United States District Court
                          401 Courthouse Square
24                        Alexandria, Virginia  22314
                          (607) 743-1894
25                        S.AustinReporting@gmail.com
         COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES    1
```

1              P R O C E E D I N G S

2              THE DEPUTY CLERK:  Civil Action 1:24-cv-1869,

3    Jessica Wickett v. Venture Global LNG Inc.

4              Will counsel please note their appearance for the

5    record, first for the plaintiff.

6              MR. DYSON:  Good morning, Your Honor.  Michael

7    Dyson and Gerry Silver on behalf of the plaintiff, Jessica

8    Wickett, who is with us at counsel table.

9              THE COURT:  All right.

10             MR. SCARBOROUGH:  Good morning, Your Honor.  Ryan

11   Scarborough from Williams & Connolly.  With me are my

12   colleagues, Elaine Horn and Emily Pistilli, for Venture

13   Global, the defendant.

14             THE COURT:  Good morning.

15             I guess who's going to be the main spokesperson?

16   Ms. Horn, are you?

17             MS. HORN:  Yes.

18             THE COURT:  If you would -- at the lectern.

19             You know, this is not the first of these cases

20   we've seen, and I suspect there are several more still in

21   the pipeline.

22             Doesn't Judge Trenga have a case as well?

23             MS. HORN:  There is a case before Judge Trenga

24   that was filed a few days after this one.

25             THE COURT:  Yeah.  And I think probably -- the

                                                              2

1  local practice that we have in Alexandria is that the first

2  judge who gets a case, if there are significantly related

3  cases of basically overlapping issues, often it goes then to

4  that first judge who got it.  So Judge Trenga's case will

5  most likely be coming to us as well.

6       So since I'm going to see a bunch of these cases,

7  you know, my first question is, have you all tried to work

8  these out?  Because the cases I've had previously, I believe

9  all those settled.  So I was sort of curious as to why

10 they're not settling now.

11      MS. HORN:  So, Your Honor, the cases that you

12 referenced before, they were in a little bit different

13 posture.  They concerned options and documentation that

14 occurred prior to 2017, and these cases involve options and

15 documentation after 2017, so the legal issues are a little

16 bit different.

17      THE COURT:  Yeah, but the first two stock option

18 packages or agreements were 2014 and 2016.  So I'm not sure.

19 I know in 2017, there were amendments and changes made, but

20 still the two seminal documents that are at issue in this

21 case are 2014 and 2016.

22      MS. HORN:  And the issue in the prior set of cases

23 was whether or not those plaintiffs had agreed to the

24 amendments in 2017.  Here, the plaintiff signed the

25 documents in 2017, and so our argument or position is that

3

1    she agreed to the amendments, so those amendments apply.

2    And we --

3             THE COURT:  And the argument that's being made is

4    that there's no real consideration for that.

5             What's the consideration for the 2017 agreement?

6             MS. HORN:  There are several elements of

7    consideration.  First, that particular -- the RC agreement

8    has an arbitration provision.  There is a mutual agreement

9    to arbitrate, and under Fourth Circuit law, Delaware law,

10   Virginia law, any law that would apply here, a mutual

11   agreement to arbitrate is, itself, consideration for that.

12   So this case --

13            THE COURT:  What's the advantage to a plaintiff in

14   arbitration when it usually requires that they pay half the

15   costs?  Isn't that still part of the arbitration that you

16   have in yours?

17            MS. HORN:  No.  This arbitration specifies JAMS,

18   and it specifies the JAMS employment rules.  And under the

19   JAMS employment rules, the plaintiff had belief they may

20   file -- they have to pay a fee of $250, but everything after

21   that is -- the costs are borne by the employer.

22            THE COURT:  Okay.  That's a slight advantage.

23   Yep.

24            So you would consider that as one.  What is the

25   other issue that you think is consideration?

                                                        4

1          MS. HORN:  Also under the law of any jurisdiction

2   that applies here, continued employment -- the fact of

3   continued employment after these agreements were reached

4   constitutes consideration, not -- I know there's been a

5   theory that there has to be a promise of continued

6   employment, but it's actually just the fact that she

7   continued to work under the agreement for seven years.  That

8   is consideration.  And that she continued to be employed for

9   seven years.  That is consideration.

10          So really there's three things.  There's the

11   mutual agreement to arbitrate.  There is the fact that in

12   the actual RCA, the very beginning, the preamble, it says

13   that there was reasonable consideration that's being

14   expressly acknowledged by the plaintiff, which she signed.

15   And then third, there's the continued seven years of

16   employment.  So all of that goes to a sufficient

17   consideration for this agreement.

18          THE COURT:  All right.  Well, we have three

19   motions before us.

20          Now, the motion to compel arbitration we probably

21   should address first, because if that were to be successful,

22   depending upon how far that goes, that would resolve the

23   case at this point.  So let me have the plaintiff respond to

24   that motion.

25          MR. SILVER:  Good morning, Your Honor.

5

1              Sure, this case is exactly the same as some of the
2    cases that we filed.  If Your Honor recalls, we had a case
3    that a widow signed -- or her husband signed the --
4              THE COURT:  I think I had three cases, didn't I,
5    last year?
6              MR. SILVER:  Yeah.  It was three cases.  So
7    they're exactly the same about whether they acted in bad
8    faith in refusing to allow option holders that were at the
9    company to exercise.  So it's the same as those cases.  And
10   we would definitely be willing to engage in any kind of
11   settlement before a magistrate or anything like that, but we
12   haven't really gotten anywhere on that.  So --
13             THE COURT:  Have you made a demand on the
14   defendant, a specific demand?  Because, you know,
15   settlements normally don't result in 100 percent -- you
16   know, 100 cents on the dollar.
17             MR. SILVER:  Sure.
18             THE COURT:  Yeah.
19             MR. SILVER:  Well, my client, Ms. Wickett, did
20   make a demand before filing the complaint, and they just got
21   nowhere with that, basically.  So -- and then so we filed a
22   complaint, and since then we've just gotten nowhere on any
23   kind of settlement talks whatever.  So we would be open to
24   it.
25             But, in any event, with regard to the -- with

                                                          6

1  regard to this RCA, the stated consideration -- they knew

2  they had to give consideration for that, and the stated

3  consideration were the options that she already had.  As

4  Your Honor knows, Ms. Wickett already had the options in

5  2014 and 2016.

6       With regard to their argument about a condition of

7  the employment or continued employment being a

8  consideration, in this case, Ms. Wickett had already worked

9  there for three years and already had substantial rights

10 working there.  And, in this case, the contract actually

11 says -- well, first of all, they didn't tell her, oh, you

12 have to sign this or you'll be fired; or if you come here,

13 you'll get to stay for a little bit.  There was nothing like

14 that.  Like in all the cases they cite, there is something

15 like this.

16      But, in this case, this is even less

17 consideration, if that's possible, because in this one, it

18 specifically says there is no promise of continued

19 employment in this agreement.  So they're basically telling

20 her that you're getting nothing for this in the agreement

21 itself.  And no case they cite has any provision that

22 basically says there is expressly not a promise of continued

23 employment.  And there has to be consideration at the time

24 that the agreement is signed, and there was none at the

25 time, and there was no promise.

7

1          The second -- after staying there for three years,

2   working with the company, building it up, she could have

3   signed this agreement, and then they could have just

4   terminated her as soon as she handed it over to them.  So

5   there was absolutely no consideration at that time.

6          And with regard to the -- with regard to the

7   arbitration provision, it's exactly what you say.

8   Ms. Wickett's been at the company for three years, she had

9   the right at that time for the public -- for a public

10  hearing, to have her disputes be heard in public, to be able

11  to get all of the discovery that you could get in a court,

12  and to have a right for a jury, and they took that away from

13  her.  And we all know that companies do that for their own

14  benefit and not for the benefit of the employee.  They

15  insisted on it, they got her to sign it.  They're trying to

16  enforce it now because it's to her benefit.  So there's no

17  consideration.  Consideration has to be a benefit to the one

18  person or a detriment to another person at the request of

19  Ms. Wickett.  And she didn't request it, she didn't want it,

20  she doesn't want it now.  So there's no benefit to her and

21  there's no detriment to them.  And so for all these reasons,

22  there's no consideration for that.

23          THE COURT:  Also, in my view as I read the

24  document, I'm not sure that it would even apply to the issue

25  about the stock options.

8

```
 1              MR. SILVER:  Right.  That's what I was going to
 2    get to next.
 3              THE COURT:  That's really the biggest problem.
 4              MR. SILVER:  Sorry.  I don't want to cut you off.
 5              THE COURT:  Go ahead.
 6              MR. SILVER:  But, yes, it's outside the scope.
 7    It's a very specific arbitration provision, and it only
 8    relates to the disputes related to this restrictive covenant
 9    agreement, and that this stock is totally different.
10              THE COURT:  I think that's a strong argument.
11              I'll let Ms. Horn respond to that.
12              MS. HORN:  So, Your Honor, going back to the
13    actual arbitration provision which commits --
14              THE COURT:  No.  No.  I'm sorry.  Go ahead.
15              MS. HORN:  -- which commits the arbitration to
16    JAMS, pursuant to the JAMS rule.  Under the precedent of the
17    Fourth Circuit and this Court, when you have a designated
18    forum, such as JAMS, where you've specified the rules and
19    those rules provide that the arbitrator can decide issues of
20    the scope of the arbitration, the arbitrability, that issue
21    is delegated to the arbitrator.  We have exactly the kind of
22    provision here, it has specified JAMS as a dispute
23    resolution arbitrator, and it specifically references the
24    JAMS rules, which provide that the arbitrator can decide the
25    scope.
```
                                                              9

1           So to the extent there is a dispute over whether

2    or not disputes about stock options belong in the -- you

3    know, follow within the penumbra of the arbitration

4    provision, that should be decided by the arbitrator.

5           But I would also point out that, again, in that

6    same preamble for the restrictive covenant agreement, it

7    specifically says:  For good and valuable consideration,

8    including the company stock options granted to employee as

9    of the effective date under the company's 2014 stock option

10   plan.  It specifically references the stock option plan and

11   the stock options that are in dispute right now.

12          THE COURT:  I don't buy the argument, so I'm going

13   to deny the motion to arbitrate.

14          I find, Number 1, the issue about consideration is

15   very, very thin; Number 2, the way I read that document, the

16   scope of the arbitration has to do specifically with the

17   non-compete and that sort of stuff, and it doesn't have

18   anything to do with the stock options.  So I'm denying that

19   motion.  And that takes care of that preliminary issue.

20          Then we have this interesting issue about the

21   motion to dismiss for lack of subject matter jurisdiction,

22   because this case is brought under diversity, and there is

23   an issue about whether the plaintiff was fully diverse from

24   the defendant at the time the complaint was filed, which is

25   the only relevant time we looked at.

                                                              10

1           I can't resolve that issue on the record that's

2    before me right now, so what I'm going to do is -- I'm not

3    bifurcating discovery, all right, but I will recommend that

4    you all try to get that issue addressed as early as

5    possible.  There's no benefit to the plaintiff.  If this

6    Court does not have subject matter jurisdiction, then, as

7    you know, at any point that issue can be raised and make any

8    judgment, if there were to be a judgment, a nullity.  So you

9    might as well get that one fleshed out quickly.  At the same

10   time, I'm not going to slow down the overall discovery

11   process in the case.

12          So I'm going to deny the motion to dismiss for

13   lack of subject matter jurisdiction without prejudice to it

14   being raised again if, after the discovery is, you know,

15   sufficiently done, one can see more clearly whether, at the

16   time the complaint was filed, the plaintiff was, in fact, a

17   resident of Virginia or the District of Columbia.  All

18   right.

19          The third motion that's before us is a motion to

20   dismiss for failure to state a claim, and that's one that

21   I'll hear a little bit of argument about.

22          So, Ms. Horn, you're there, you might as well.

23   It's your motion.

24          MS. HORN:  Certainly.

25          On the 12(b)(6) motion, Ms. Wickett asserted four

                                                              11

1   different claims, two contract claims, express and implied,

2   one claim under the Virginia Wage Payment Act, and then a

3   final retaliatory discharge claim.

4            On the express and implied contract claims, the

5   alleged breach has to do with whether or not she was allowed

6   to exercise the stock options.  She did receive the stock

7   options.  So, from an express breach perspective, there was

8   no provision that was breached.  She received her options;

9   the question is whether or not she was allowed to exercise

10  them.

11           In terms of the implied breach of the covenant of

12  the good faith and fair dealing, under the stock option

13  plan, there was a New York choice of law provision.  And

14  under New York law where you're dealing with an at-will

15  employment context, any claims that are based on the implied

16  covenant do not -- cannot be brought forward under New York

17  law.  They just don't exist.

18           And we cited multiple cases in our brief regarding

19  other instances where people were alleging implied

20  covenant-type claims based on equity compensation or stock

21  buybacks or what have you, and none of those cases were

22  allowed to proceed because that cause of action is not

23  recognized in New York.

24           On the Virginia Wage Payment Act claim, that is a

25  statutory claim.  If you read the text of the statute, it

12

 1    does not encompass stock options or stock; it encompasses

 2    things like wages, bonuses, cash compensation.  So it would

 3    be quite the stretch to include stock options.  But even if

 4    you were to try to stretch it to include stock options,

 5    again, Ms. Wickett did receive stock options; the question

 6    is whether or not the restrictions that followed those,

 7    whether or not they were applied properly.

 8            And then on the retaliatory discharge claim, under

 9    Virginia law for an at-will employee to bring a retaliatory

10    discharge claim, there needs to have been an allegation of a

11    breach of either a federal or state statute made before the

12    discharge, and that didn't happen here.

13            The only allegation that's in the complaint about

14    what was made was there was a complaint that it was unfair

15    to not allow her to exercise her options.  But something

16    being unfair is not a federal statute, it's not a state

17    statute, and it will not support a cause of action for

18    retaliatory discharge in Virginia.

19            THE COURT:  All right.  Counsel.

20            MR. SILVER:  Okay.  With regard to the first

21    claim, that's a breach of the 2014 and 2016 stock option

22    agreements where Ms. Wickett was granted options with no

23    consent requirement whatsoever.  And she tried to exercise

24    the 2014 options, and she was denied that because she was

25    told there was a consent requirement when there was none.

                                                              13

1    And the reason they claimed that there was a consent

2    requirement is because of the 2017 agreements that she

3    signed.  But like the RCA, there's absolutely no

4    consideration for those because she already had the options

5    that were the purported consideration.  So the consent

6    requirement in there is unenforceable as a matter of law.

7              And some of the arguments that they make are just

8    wrong.  Like, they argue for the first time that under

9    New York law, just signing the agreement is enough.  First

10   of all, they make that argument for the first time on reply,

11   so I think it should be rejected for that reason alone.

12             But, in any event, it's clear that New York law

13   shouldn't even apply here, because under Virginia law or

14   New York law, you don't apply another state's law based on

15   the governing law provision if there's not sufficient

16   contacts with the state, if there's not sufficient contacts,

17   if there's not a sufficient relation.  And, here,

18   Ms. Wickett was in D.C., worked in Virginia, the company is

19   in Virginia, they have plants in Louisiana.  It has nothing

20   whatsoever to do with New York, so that doesn't apply.

21             And then also -- and, in any event, this isn't a

22   modification of a contract; this is a -- these 2017

23   agreements were like brand-new contracts.  She had like a

24   one letter grant of options with, like, no real terms other

25   than she had options, and she could exercise them within ten

14

1    years.  This is, like, an 11-, 15-page agreement with

2    hundreds of terms.

3          So, in any event, the bottom line is the 2014 and

4    2016 agreement we state a claim that there was a contract,

5    she had options, the right to exercise them with ten years,

6    she tried to exercise the 2014 options, they didn't let her

7    do it for a consent requirement that's not in that contract.

8    So we think, at the very least, we state a claim at this

9    juncture for breach of those contracts.

10         With regard to the second claim, which is the

11    breach of the implied covenant of good faith under the 2017

12    agreements, Delaware law is clear -- Delaware law governs

13    under those agreements, and it's clear that there's an

14    implied covenant of good faith with respect to options

15    specifically, that it's -- an option involves an act of

16    future discretion, and therefore there's an implied covenant

17    of good faith.

18         The cases they cite do not apply because they only

19    relate to when somebody's trying to get around the whole

20    at-will employment by saying, oh, wait, but you're firing me

21    in bad faith, you can't do that.  Like, that you can't do

22    because then you're sort of undermining the whole concept of

23    at will where somebody could be fired for any reason or no

24    reason.

25         But that's not the claim here.  We're not claiming

15

1    they breached the implied covenant of good faith by

2    terminating Ms. Wickett; we're saying that they breached the

3    implied covenant of good faith for her as an option holder

4    when she tried to exercise options, which is a future act of

5    discretion.  So we believe that we state a claim there under

6    any state's law on that.

7            With regard to the violation of the Wage Payment

8    Act -- and Your Honor was sort of referring to this a little

9    bit earlier, it sounds like in the other case, but although

10   the statute itself doesn't define wages, the Virginia code

11   statute does define wages to include any compensation that's

12   not cash-based.  And we cite the *Blanchard* case that

13   specifically says that you should look to that statute in

14   Virginia law to determine wages, and we just conclude --

15   include non-cash compensations, such as stock.  And this

16   *Campbell* case that recently came out said the Wage Payment

17   Act should be construed as broadly as possible, and includes

18   all compensation for services.

19           Here, the action's not for the options.  What

20   we're saying is is that Ms. Wickett was deprived of the

21   stock, which was a key component of her compensation.  And

22   even in our complaint, Exhibit A, when she was granted the

23   options, the company actually said that the options and the

24   stock were a key part of her compensation.  They gave it

25   to -- in appreciation for the quality of your work and to

16

```
1    align our interests, and as a part of your compensation, we
2    are pleased to offer ten-year options equivalent to 50 of
3    our underlying Class A common shares.
4            So both the options and then the shares were a
5    significant part of her compensation package.  I mean, the
6    reason she came to the company in the first place was the
7    chance of growth that actually happened.  And so, therefore,
8    she was deprived of wages, as defined in the statute, and
9    compensation for services, and, therefore, she has a claim
10   that she was deprived of wages under the Act, and we think
11   that claim should stand.
12           And then with regard to the wrongful termination,
13   she expressly stated not just that it was unfair, but that
14   she was cheated and deprived of the stock.  And being
15   deprived of the stock is being deprived of wages.  So she
16   had a reasonable good-faith belief that she was being
17   deprived of compensation under the law.  And she -- and
18   there's no -- here we allege the dates.  The dates are very
19   clear.  We allege that she said she was cheated out of the
20   compensation to the two founders, and she was fired within
21   two business days of that happening.  I mean, it couldn't be
22   more obvious that she was fired for complaining about not
23   being able to exercise her stock.
24           So, at this juncture, we submit that we clearly
25   state a claim for retaliation for complaining about a
```

17

```
 1   violation of law.

 2              THE COURT:  All right.  Thank you.

 3              MR. SILVER:  Thank you.

 4              THE COURT:  Ms. Horn, do you want to respond?  In

 5   particular, respond to the last issue.

 6              MS. HORN:  On the retaliatory discharge issue?

 7              THE COURT:  On the retaliation, yeah.

 8              MS. HORN:  Yes.

 9              So, again, it's not just that you complained about

10   being fired; you have to complain about some violation of a

11   state or federal law that occurred, and then you were

12   retaliated against and fired for making that complaint.

13              There was no complaint about any federal or state

14   law that was being violated.  That didn't come up until

15   after she was already terminated, so it can't be the basis

16   for a retaliation claim if it didn't come up until after the

17   termination.

18              THE COURT:  All right.  What I'm going to do in

19   this case, because I am satisfied that Counts 1, 2 and 3 are

20   adequately alleged and pled, they're going to go forward.

21   So the motion to dismiss is denied as to those three counts.

22              But in terms of the wrongful termination, I agree

23   with defense counsel that there has to be an explicit, clear

24   invocation of the fact that one is complaining about the

25   violation of federal or state law.  And just saying that I'm
```

                                                                18

1    not getting an opportunity to exercise my stock options,

2    it's really complaining about the breach of contract, and

3    I'm satisfied, therefore, that Count 4 should be dismissed,

4    and so we'll dismiss Count 4.  The other three are going to

5    go forward.

6            And, again, I don't believe we've issued a

7    scheduling order in this case, so one is going to be issued

8    today, which means, again, this is the most economically

9    wise time to try to settle this case.  If this case survives

10   motions -- and I suspect it probably will -- it will not

11   have much jury appeal, in my view, for the defendant.  You

12   have a young woman who I believe just out of school went to

13   work for a startup.  The startup just took off and it made a

14   fortune.  I mean, I think billions.  A lot of money was

15   obtained.

16           And this was, you know, a common thing.  Work

17   equity.  I suspect that when we get into the discovery,

18   we'll probably see that the salary she was being paid

19   probably was not as high as others might have gotten at that

20   time.  A lot of people, especially in this part of the

21   country, you know, work for these startup companies for much

22   less cash than they could get as a regular salary because

23   they're getting stock options or some concept of, you know,

24   benefiting from the overall success of the company.  And she

25   was there for, what, ten years?  That's a long time.  I

                                                           19

1    think the plaintiff will have a lot of jury appeal.  And I

2    don't know the grounds upon which or for which she was

3    terminated.  Even though the retaliation claim may not be a

4    specific claim in the lawsuit, it certainly would be within

5    the scope of the issues to be presented to a jury in

6    determining, if they do find liability, what the appropriate

7    damages should be.  So I think the defendant really should

8    give a hard look at this case, as well as the others if

9    they're similar.

10          You know, when you make a promise to give people

11   stock options, especially in those first two agreements

12   where there were no restrictions, and then, after the fact,

13   add these restrictions without there being a really clear

14   consideration, some true benefit to the plaintiff for adding

15   those restrictions, it doesn't look good.

16          So this is the time to -- Judge Vaala is the --

17   I'm sorry, no.  Judge Fitzpatrick is the magistrate judge.

18   He's a very, very good mediator.  You certainly can use

19   private mediation services as well.  But that would be my

20   strong recommendation to you all to do it sooner than later,

21   but the scheduling order will issue today.

22          Thank you.

23          MR. DYSON:  Thank you, Your Honor.

24          MR. SILVER:  Thank you, Your Honor.

25          (Proceedings adjourned at 10:59 a.m.)

                                                              20

1            ----------------------------------

2    I certify that the foregoing is a true and accurate

3    transcription of my stenographic notes.

4

5                              *Stephanie Austin*

6                         Stephanie M. Austin, RPR, CRR

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

21